E. Milton Jones, Plaintiff in Error, v. University Research Extension, Defendant in Error.

## Gen. No. 15,294.

1. ASSUMPSIT—*effect of account stated.* If an account is stated the defendant is not precluded from disputing any item as an account stated is simply *prima facie* evidence of its correctness.

2. ASSUMPSIT—*what not account stated.* An account does not become stated as against a corporation if upon the making up of the same such corporation is not represented by a person officially entitled to object.

Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed October 6, 1910.

STEDMAN & SOELKE, for plaintiff in error.

W. A. WALKER, JR., and F. M. LOWES, for defendant in error; GOODRICK & GOODRICK, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff commenced this suit and sought to recover his claim upon the theory that it rested in an account stated, and relied somewhat upon the account books of defendant to support his contention and theory. Defendant interposed a counterclaim against plaintiff in the nature of a set-off, and the cause being submitted for trial without a jury, the trial judge found the issues in favor of defendant and against plaintiff and assessed as the amount due defendant from plaintiff in excess of his claim at $202.46, and judgment was accordingly entered for that sum. Plaintiff prosecutes this writ of error and insists that the judgment should be reversed, contending that under the facts in proof he is entitled to recover of defendant $370.98.

The evidence discloses that prior to the organization of the defendant company, about February 26, 1906, plaintiff was engaged in the business of selling certain books by subscription; that such business and its assets were turned over to the defendant corporation in payment for its capital stock, and that while the stock was held in the name of plaintiff, his wife and others, one R. W. Roberts was the real, beneficial owner of most of it. Plaintiff was president of defendant and his wife and himself were the directors. The business was mainly under the management, control and direction of plaintiff, he being president and manager until October 8, 1907, when Roberts became president and plaintiff vice-president, and so continued until February 15, 1908, when plaintiff resigned and has had no connection with defendant since. A large part of the stock was on October 8, 1907, surrendered to Roberts, the remaining shares being placed in escrow until plaintiff and the other holders paid certain money to Roberts, as provided in a certain written agreement entered into between them. At the time of the change in management there was transferred

from the old books of the defendant, kept under the direction of plaintiff, to new books opened for the corporation under the direction of Roberts, a balance to the credit of plaintiff of $901.19. Roberts at this time stated that he would settle the amount of said balance claimed by plaintiff with him later, conceding at the same time that defendant was entitled to some credits. This was done in accord with the auditing of the books, which was at that time made at the instance of Roberts. Plaintiff had a salary of $50 a week to the time he quit, February 15, 1908, which he received to that time. On February 11, 1908, plaintiff and defendant entered into an agreement of arbitration concerning the accounts between them. In January, February and March, 1907, plaintiff and his wife made an extended tour through Texas, New Mexico and California, during which time he sold books of defendant, which, at the usual commission rate paid for like sales, entitled him to $810. On plaintiff's return he caused to be credited to his account on the books of defendant for travelling expenses incurred in the tour last mentioned $743.60. On an auditing of plaintiff's account at the instance of Roberts, the item of expenses, $743.60, was charged back, as also twelve weeks salary at the rate of $50 a week, making $600, which, with other items set forth in the trial court's finding, made a charge in favor of defendant under its claim of set-off, of $1012.46, which, after crediting plaintiff with $810, the amount of commission on his sales, made in Texas, New Mexico and California, left a balance due defendant of $202.46, the amount for which judgment was entered. Salary and expenses on the above mentioned trip were denied plaintiff on the theory that the trip was one of pleasure for himself and his wife, and was not made for the business interest and welfare of defendant. When it is taken into account that the commission paid amounted to one-half of the price of the books sold, it will be seen that to allow the charges of plaintiff in addition to such commission would be unconscionable, as they would be, including salaries of himself and wife, vastly in excess of the total amount charged for the books sold. A painstaking examination of

all the evidence in the record convinces us that it fully supports the findings and judgment of the trial court.

The account between the plaintiff and defendant, made up as it was by the plaintiff himself, regardless of the interests of the defendant, whose officer he was and whose duty it was to protect such interests, was not an account stated within the legal definition of that phrase. The defendant was represented by the plaintiff during the time the account was manipulated, and through him only could it be challenged or repudiated. When Roberts became president of defendant he did challenge it, as he had a right to do in its interest. But it is said that Roberts knew of the account before the change of officers, and therefore defendant is bound. It is an all sufficient answer to such contention to say that Roberts had no official connection with defendant at this time and consequently no power of protest. Hanna v. People, 198 Ill. 77. Besides, what interest Roberts had in defendant was vested in plaintiff, who therefore owed him the additional duty of dealing fairly with the company, so that the interests entrusted to his care might be duly conserved and protected. Furthermore, the agreement to arbitrate is all sufficient in itself to override the contention that the account placed on the books of defendant by plaintiff in his own favor was an account stated. None of the cases cited by plaintiff have any application to the facts in the case at bar; neither is any of them in principle in conflict with our holding.

There being no account stated proven, defendant was at liberty to go into the accounts as fully as it desired and considered necessary not only to support its own counterclaim, but to defeat the claim of plaintiff and sustain its defense thereto and all its items. If the account had been an account stated, defendant would not have been precluded from disputing any item, for an account stated is simply *prima facie* evidence of its correctness. Poppers v. Schoenfeld, 97 Ill. App. 477.

The judgment of the Municipal Court is affirmed.

*Affirmed.*